HON. JAMES BARRETT,
HON. LOYAL C. KELLOGG,
HON. ASAHEL PECK,           } ASSISTANT JUDGES.
HON. WILLIAM C. WILSON,
HON. BENJAMIN H. STEELE.

---

## RECEIVER OF DANBY BANK *v.* STATE TREASURER.

*Banks. Bank Fund. State Treasurer. Practice. Venue.*

The bond provided for in § 87, ch. 84, p. 495, C. S., is a mere substitute for the liability and duty of the bank to pay in towards the Bank Fund, for its creation or replenishment; and the giving of such bond has no effect upon the fund already accumulated, nor upon the right of the bank to draw out its proportionate share of it.

When a bank ceases to do business in consequence of its insolvency, the Bank Fund then becomes chargeable for the indebtedness of the bank in excess of its property and effects.

Receiver of Danby Bank *v.* State Treasurer.

It is the duty of the State Treasurer to pay over to a receiver of an insolvent bank so much of the Bank Fund as may be in the hands of the Treasurer under the statute, and necessary to pay such indebtedness, upon the order of the court of chancery.

The Treasurer holds the money constituting the Bank Fund as a specific fund in which the State has no property, and he is charged with special duties in respect thereto; therefore upon petition of a Receiver for a writ of *mandamus* to compel the Treasurer to pay over said fund, pursuant to a decree of the court of chancery, the order should not require him to pay to the Receiver any money of the state as distinguished from the Bank Fund; nor should it require him to pay money of his own, on the score of his having subjected himself to liability for the *deficit* of that fund by reason of his having wrongfully paid it over to banks not entitled to have it.

The Receiver properly instituted this proceeding in the county of his personal residence, although the former decree was obtained in another county in which the bank was located.

PETITION FOR MANDAMUS. The petition was dated December 22d, 1865, and was addressed to the Bennington county supreme court, January Term, 1866.

The petitioner, A. L. Miner, of Manchester, in said county, represents that the Danby Bank was enjoined by the court of chancery, on the 29th day of December, 1857, that he was appointed receiver of said bank, on the same day, and that one year from that date was allowed by the chancellor for the creditors of said bank to present their claims to the petitioner, as such receiver, for allowance.

There was an unpaid balance due the creditors upon claims allowed by the receiver, after applying the assets of the bank towards the payment of said claims, under direction of the chancellor, to the amount of $34,623.48, including interest.

The Danby Bank having contributed to the bank fund, as required by law, the receiver, on the 14th day of January, 1864, applied to the court of chancery for an order that the treasurer of the state, should pay to the receiver a sum sufficient from the bank fund to satisfy the claims against the Danby Bank, which have been allowed.

The hearing on said application was continued from time to time, until the 27th day of April, 1864, when the state treasurer filed his written answer, that there was in the treasury, belonging to, and being such bank fund, the sum of $13,125., exclusive of interest, and that of that sum, the Danby Bank had contributed the sum of

$750.00; the Battenkill Bank, at Manchester, $2,225,00; the Poultney Bank, at Poultney, $2,225.00; the Farmers' Bank, at Orwell, $4,500.00; the Bank of Newbury, at Wells River in Newbury, $3,375.00. Whereupon the court of chancery made an order and decree in compliance with the application, from which the treasurer appealed to the supreme court. And at the Rutland County January Term, 1865, the appeal was entered, a hearing had thereon, the decree of the court of chancery affirmed, and the case remanded. And on the 25th of August, 1865, the court of chancery made a final order in accordance with the decision of the supreme court.

The receiver, on the 26th day of August, 1865, filed with Hon. John B. Page, the state treasurer, a duly certified copy of said last mentioned decree, and demanded the amount of money specified in said decree, for the purpose aforesaid. Whereupon the said treasurer paid to the said receiver the sum of $7,380.00, being the amount contributed by the Danby Bank, the Battenkill Bank, and the Bank of Newbury, with the interest which had accumulated at that time, and refused to pay the receiver any further sum.

The receiver further represents that there was then in said treasurer's custody, the amount contributed by the Farmers Bank, of Orwell, and the Bank of Poultney, at Poultney, to said bank fund, the sum of $7,532.00, including interest on the same since the time interest had been paid to the said banks. And the receiver further says, that in the year 1855, the state treasurer made ·his annual report to the auditor of accounts, that there was then in the said bank fund the sum of . . . . $29,400.44

And that there was paid into said fund in the

year 1855, after said report was made

the sum of . . . . . 718.75

Also in the year 1856, the sum of . 134.50

Also in the year 1857, the sum of . . 750.00

Making an aggregate sum of . $31,003.69

Which by the statute laws of this state, should have remained in the state treasury, a perpetual fund, to be inviolably appropriated to the payment of such portion of the debts, exclusive of the capital

stock, of any such corporation which should become insolvent, as remained unpaid, after applying the property and effects of such insolvent corporation.

And the receiver further says, that a former state treasurer, in the year 1849, refunded and paid back from said bank fund, to the Stark Bank of Bennington, the sum of $188.81.; also, in the same year, to the Black River Bank, at Cavendish, the sum of $300.00; all of which was paid without the authority of law, and should have remained in the treasury as aforesaid, which two sums being added to the above sum, makes the sum of $31,492.50.

And the receiver says, that a former state treasurer had refunded or paid back to the following banks, from the said bank fund, the several sums as below specified:

To the Bank of Brattleboro, in 1855, . . . $3,156.25
To the Bank of Vergennes, in 1856, . . . . 4,500.00
To the Bank of Bellows Falls, in 1858, . . . 4,500.00

All of which re-payments were made to said banks without the authority of law, and in violation of the provisions of the statutes; and said fund should have remained inviolably in the state treasury for the purpose aforesaid.

The said Miner, receiver of Danby Bank, prays the court that a peremptory writ of *mandamus* may issue, commanding the said John B. Page, treasurer, to pay to the said Miner, as such receiver, the sum above mentioned, in the decree of the court of chancery made on the 25th day of August, 1865, as aforesaid, that the same may be applied in payment of the debts allowed against the Danby Bank, as aforesaid.

The said John B. Page, state treasurer, represented in his answer to said petition, that he based his refusal to pay said receiver any further sum at the time demanded, upon the fact (of which he then apprised said receiver,) that the Farmers' Bank of Orwell, and the Bank of Poultney were claiming the balance of said bank fund then remaining in his hands, and had notified him of their claims.

After stating the account of the bank fund from 1854, as taken from the state treasurer's books, the said Page set forth that on the 17th of October, 1860, he received from his predecessor in office on

account of said bank fund the sum of $13,125.00, which comprised the entire bank fund which ever came into his hands, except interest that had accrued thereon.   It further appeared in the answers of the banks named, to said petition, that October 8th, 1855, the directors of the Bank of Brattleboro, and October 8th, 1856, the directors of the Bank of Vergennes, and September 17th, 1857, the directors of the Bank of Bellows Falls, and in the year 1849 the respective directors of the Stark Bank, and the Black River Bank, respectively executed bonds to the treasurer of the state in conformity with the provisions of sections 57 and 87 of the Compiled Statutes, to secure the payment of the bills issued, and the debts of said banks respectively ; and on the occasion of issuing and depositing said bonds, each of said banks withdrew its proportional share of said bank fund, and the same was paid over to said banks by the state treasurer.

It appeared from the answer of M. Clark, agent of the Bank of Poultney, that the charter of said bank expired on the first day of January, 1857, but was extended for the purpose of closing its concerns, by several acts of the legislature, until first of January, 1866. And the said bank claimed that said acts of the legislature did not affect its right to withdraw from the bank fund at the time of the expiration of its charter in 1857, its contributions to said fund, but that the then state treasurer, H. M. Bates, refused upon demand, September 3d, 1859, to pay over the same.

And the answer of said Clark further said that the said receiver did not file his application for said bank fund, as above set forth, until January, 1864.

And further answering the defendant said that the Danby Bank was located and did business in Danby, in the county of Rutland, and that all the prior proceedings instituted for the purpose of closing up the affairs of said bank, were in the court of chancery, in and for the county of Rutland, and that the proceedings in this suit were supplemented thereto, and should have been preferred in the supreme court, in and for the county of Rutland ; and these petitionees insisted that said petition should, also, for that reason be dismissed.

The answer of the Farmers' Bank, of Orwell, was substantially like that of the Bank of Poultney ; both banks insisting upon their

right to demand and receive from the treasurer their respective contributions to the bank fund, on the ground of there being no legal charge thereon in favor of the creditors of Danby Bank, at the time of the expiration of their respective charters. The charter of the Farmers' Bank expired January 1st, 1864, The charters of the said Bank of Brattleboro, Bank of Vergennes, Black River Bank, and the Stark Bank, are each still in life and full force.

It was further claimed in the answer of the National Bank of Vergennes as a cause for dismissing said petition; that in 1853 it was provided by an Act of the legislature, that at the expiration of its then running charter, on the first day of January, 1856, the said bank should be reorganized; that all its old affairs should be adjusted and its capital increased, and that in pursuance of said Act the contribution of said bank to the bank fund, was appraised as assets, and a dividend to stockholders was made, based upon said appraisal, whereby the sum of $4,500., which constituted said contribution, was appropriated and exhausted for the benefit of retiring stockholders under the direction of a committee of the legislature; and thereupon the directors of the reorganized bank, gave bonds as required by law for the redemption of bills, etc. Other facts upon this point are omitted, as the question raised thereon is not decided in the opinion. This defendant also raised the question of jurisdiction, which was raised by all the banks, but not by the treasurer.

Other facts are stated in the opinion.

*A. L. Miner* and *Peck & Fifield*, for Petitioner.

*G. W. Harmon*, for Petitioner and Creditors.

*E. Edgerton*, for State Treasurer.

*George F. Edmunds*, for National Bank of Vergennes.

*Prout & Dunton*, for Farmers' Bank and Bank of Poultney.

*C. H. Chapman*, for Bank of Black River.

The opinion of the court was delivered by

BARRETT, J.  For the purposes of this proceeding, we think it was proper for the receiver to institute it in the county of his personal residence.  This is not a continuation, by way of supplement, of the original proceeding under the statute, in such a sense that the *venue* of that proceeding draws to it and fixes the *venue* of this petition.  Of course, then, the *venue* depends on the general provisions of the statute, and by them the receiver properly instituted the proceeding in the supreme court in and for Bennington county.

The several banks interested in the " bank fund," under the claim of the receiver, were notified of the petition, and they have appeared and been heard in an argument upon issues and questions made by their respective answers, as also has the treasurer.  The court therefore not only feel at liberty, but, in view of the character of the case and of the interests connected therewith, it would seem to be a duty, to express opinions on some points beyond what would be necessary for the present disposition of the case by the order to be made.

The mode of creating the " bank fund," and of continuing and replenishing it, in connection with the purposes for which it was created, and the provisions for administering it, shows clearly that it was designed to be and remain *perpetual*, subject to the purposes and provisions of the law.  The statute provides only two modes for appropriating and withdrawing money from that fund : one in payment of the debts of an insolvent bank ; the other,—in sec. 13 of the chapter on Banks in the Compiled Statutes,—in repayment to a bank, of which the charter has expired, its proportional share of said fund.  Section 87 does not provide anything in relation to the appropriation of said fund, nor as to the rights of the banks in it.  It provides that on giving a certain bond the bank shall thereafter be exempt from all payments required to be made to the " bank fund," " and from all the provisions for the establishment, preservation and regulation of said fund."  The court regard this exemption as prospective, commencing with the giving of the required bond and continuing only so long as such bond shall be kept good.  In other words, the bond provided for in the 87th section is a mere substitute for the liability and duty of the bank to pay in towards the " bank

fund " for its creation or replenishment; and the giving of such bond has no effect upon the fund already accumulated, nor upon the right of the bank to draw out its proportionate share of it.

The exemption "from all the provisions for the establishment, preservation and regulation of the fund," was designed to be only coextensive, in the time of its operation, and in respect to the subject matter on which it was to operate, with the exemption *from all payments to said fund, required in said chapter to be made.*

None of the banks, therefore, that had contributed to that fund, were entitled, by reason of having given the required bond, to withdraw what they had paid in towards that fund pursuant to the provisions of that chapter. The right to do so accrued only upon the expiration of the charters of the several banks respectively. The purpose of creating the fund was to provide a security for, and a means of paying the balance of the indebtedness of a bank that had become insolvent in excess of its property and effects. That balance would of course depend on the amount of its debts, and the amount of money to be realized from the property owned by it at the time it ceased to do business in consequence of its insolvency. In view of the purpose for which the fund was created, it seems plain that the fund must be chargeable for the balance of such debts as of the time when the bank ceased to do business by reason of its insolvency. The proceedings in the court of chancery, required by the law to be instituted upon the happening of such insolvency, are for the purpose of ascertaining the extent to which the fund is to be subjected, and to appropriate it accordingly. This being so, none of the banks that had contributed to the fund, now claimed by the receiver, were entitled to withdraw their contribution thereto, by reason of the expiration of their respective charters, unless it be the Vergennes Bank, for it stands confessed that none of their charters had expired at the time Danby Bank stopped business on account of being insolvent.

Whether the charter of the Vergennes Bank is to be regarded as having expired at that time, and therefore said bank was entitled to have the money repaid, as it has been, it is not now necessary, nor perhaps important, that the court should express an opinion. The

matter stands upon the peculiar provisions of the acts by which that bank has been kept on foot, and the course taken under those acts for continuing it, either as *the old bank extended,* or as a *new one,* absorbing and standing in the place of the old one. It seems more appropriate to leave the decision of the question till it shall become necessary under some proceeding that shall raise the issue directly between the proper and necessary parties to it.

It is obvious from what has now been said, that, in the opinion of the court, it is the right of the receiver to have, and the duty of the treasurer to pay over to him so much of the " bank fund " as is now in the hands of the treasurer under the statute, charged by the order of the court of chancery. To this extent the court have no doubt that a peremptory writ should issue.

But it is claimed that, under the law, it should be held that the whole amount of that fund is in the hands of the treasurer, undiminished by the payments that have been made to the banks named of the proportions they had respectively contributed to said fund. The soundness of this claim depends on the real character in which the treasurer receives and holds the money which goes to constitute the " bank fund." If it be a receiving and holding of the money as the property of the state, the same as he receives and holds the money that is paid into the treasury by the collectors of taxes, that is to say, if it be money of the state, subject, indiscriminately with the money derived from taxation, to a special charge by a permanent general law, and an appropriation by virtue of such charge to the satisfaction thereof, then it would follow that the treasurer should pay over to the receiver, of the money in the treasury, indiscriminately to the full extent of money in his hands as treasurer, not exceeding the extent of such charge. But, in the opinion of the court, this is not the correct view to be taken of the subject. We think the treasurer holds the money as a specific fund in which the state has no property. He is charged with special duties in respect to that fund, and becomes officially responsible for the proper discharge of those duties. Whether in virtue of his official responsibility, and his liability under his official bond to respond for his official defaults, the state sustains such a relation as to render it, in

supposable cases, its duty to make good any deficiency in the "bank fund," the court are not called on to decide or express views. For present purposes it need only be added, that all the provisions of the statute upon the subject, preclude the idea of that fund being absorbed by the state as a part of its general assets, with only the duty on the part of the state to permit an equal amount to be taken from the treasury to answer the purposes of the statute as to that fund. The statute provides for an entire separation of the fund; for its investment by the treasurer; for its recall by him or its replacement by the sale of securities which he has received by way of investment; and, moreover, it expressly declares that it shall be the property of the several banks that have contributed to its creation. There is no provision for the treasurer to supply any deficiency in that fund at any time, or for any purpose, by transferring the moneys of the state in his hands to the account of said fund. To supply the money to meet the charges upon the fund the only mode is by the sale of the securities, a collection of the loans, and a resort to further contributions by the banks, as provided in the statute. Hence it is obvious that, in order to warrant the treasurer to appropriate the money of the state to the purposes of the "bank fund," special authority, by act of the legislature, would be necessary. The order, therefore, by *mandamus* should not require him to pay to the receiver any money of the state as distinguished from the "bank fund." In the opinion of the court, also, such order should not require him to pay money of his own, on the score of his having subjected himself to liability for the deficit of that fund by reason of his having wrongfully paid it over to banks not entitled to have it. In the first place this is not the appropriate proceedings in which to make the issue and try the question of his liability on this score. In the next place the order can properly extend only to require him to do what it is his clear ministerial duty to do. That ministerial duty must be regarded as limited to the paying over of the funds in his hands. Whether he may be liable to respond in damages for official or personal default, can properly be determined only by a different proceeding, and if so liable, the final remedy would be by process to enforce pecuniary satisfaction by payment of the adjudged damages.

But, in the present cace, a conclusive reason for limiting the order exists in the fact that the present treasurer has had nothing to do with the " bank fund," except to receive from a predecessor the sum now in his hands, and no more, and that predecessor, ( Hon. John B. Page, ) passed to the present treasurer, all that he received from H. M. Bates, a former treasurer, except what he has paid to the receiver under the order of the chancellor.   The amount of the fund, in the accumulation and disposition of it since 1854, and the present condition of it, are set forth in the answer of said John B. Page, which is adopted and supplemented by the present treasurer ; by which it appears that all the requirements made to the various banks that had contributed to the fund, were made by Mr. Bates while he was treasurer.   John B. Page stands therefore clear of any ground or reason for imputing to him official fault or misjudgement in this respect ; and, in view of the facts set forth in his answer constituting the reason for his withholding from the receiver the balance of the fund claimed by the Farmers' Bank and the Bank of Poultney, there seems to be no ground for imputing to him any personal short coming in thus withholding that balance.   The same remarks apply as well to the present treasurer.

It is therefore adjudged that a writ issue in due form, commanding John A. Page, treasurer of this state, to pay over, under the said order made by the chancellor, the sum of            , being the amount of the " bank fund " in his hands as treasurer, after deducting therefrom the sum paid, or to be paid, to their counsel by the said John A. and John B. Page, for the reasonable charges of such counsel, for appearing and answering in court to said petition, to be fixed and allowed by the chancellor by whom the original order upon the treasurer to pay over the bank fund to said receiver was made.